UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS JOSEPH SHEEHY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-1973-JLR-JPD<br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Thomas Joseph Sheehy appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 34 year old man with a ninth grade education. Administrative Record ("AR") at 160, 202. His past work experience includes employment as a hand packager and auto wrecker. AR at 62, 202. Plaintiff was last employed in 2010. AR at 172, 177.

REPORT AND RECOMMENDATION - 1

On June 25, 2010, plaintiff protectively filed concurrent applications for SSI payments and DIB, alleging an onset date of February 13, 2002. AR at 21, 160-66. At the hearing, plaintiff amended his alleged disability onset date to the date of his SSI application, effectively withdrawing his application for DIB. AR at 41. Plaintiff asserts that he is disabled due to manic depression, agoraphobia, paranoia, diabetes, bilateral hearing loss and hypertension. AR at 201.

The Commissioner denied plaintiff's claims initially and on reconsideration. AR at 72-91. Plaintiff's requested hearing took place on January 24, 2012. AR at 36-67. On February 15, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could return to his past relevant work as a hand packager and perform other work existing in significant numbers in the national economy, including as a laundry worker, mail clerk, small products assembler, indoor janitor, and grounds keeper. AR at 28-30. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 3-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 30, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Sheehy bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On February 15, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since June 25, 2010, the alleged onset date.

3. The claimant has the following severe impairments: a major depressive disorder, a panic disorder with agoraphobia, and a paranoid personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine work with few co-workers. He should avoid work with the public. He needs a routine and predictable work environment.

6.     The claimant is capable of performing past relevant work as a hand packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.     The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2010, through the date of this decision.

AR at 23-30.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in failing to adequately address the opinion of examining provider Dr. Owen Bargreen, PsyD, and failing to provide sufficient explanation for the weight assigned this opinion.

2. Whether the ALJ erred in finding the Plaintiff less than credible.

3. Whether substantial evidence supports the ALJ's conclusion that the Plaintiff's residual functioning capacity was limited to the ability to perform simple, routine work with few co-workers, no contact with the public, in a routine, predictable environment, and as a result he would be capable of performing substantial gainful activity.

Dkt. No. 16 at 3.

## VII.    DISCUSSION

### A.    The ALJ's Assessment of the Medical Evidence

Plaintiff argues the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence to reject the medical opinion of examining psychologist Owen J. Bargreen, PsyD, that plaintiff had marked limitations in multiple areas of work related functioning. Dkt. 16 at 3-7. Dr. Bargreen defined marked limitation as a "very significant interference with the ability to perform basic work related activities of communicating, understanding, and follow directions." AR at 250, 523, 529. Plaintiff asserts Dr. Bargreen's opinions are significant because the functional limitations opined by Dr. Bargreen—including limitations working with coworkers and supervisors and limitations in hygiene and appearance—would preclude competitive employment. Dkt. 16 at 10.

REPORT AND RECOMMENDATION - 6

The ALJ rejected Dr. Bargreen's opinions because "such degrees of severity are inconsistent with [Dr. Bargreen's] own contemporaneous mental status exams…" AR at 28. After describing two inconsistencies, the ALJ also noted that Dr. Bargreen "likely relied heavily on [plaintiff's] subjective complaints", which the ALJ found not credible. AR at 28. These reasons, however, are not specific and legitimate reasons supported by substantial evidence sufficient to reject the opinion of an examining psychologist. *See Bayliss,* 427 F.3d at 1216.

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

Here, Dr. Bargreen examined plaintiff on three occasions in 2009, 2010 and 2011. AR at 247-53, 521-32. During these examinations, Dr. Bargreen completed clinical interviews, records review of prior evaluations, and mental status examinations. AR at 247-53, 521-32. Over the years, Dr. Bargreen consistently concluded plaintiff had marked or greater limitations in various areas of work related functioning. AR at 247-53, 521-32.

*1. Inconsistencies*

In support of her rejection of Dr. Bargreen's opinions, the ALJ first noted Dr. Bargreen opinioned in 2010 that plaintiff had marked cognitive limitations in various areas of work related functioning, yet, in the same evaluation, also stated that plaintiff had only "moderate

REPORT AND RECOMMENDATION - 8

problems with his short term memory" because plaintiff was unable to repeat six digits forwards and backwards.  AR at 28 (quoting AR at 525); *see* AR at 524-525 (finding marked limitations in the ability to: understand, remember and follow simple instructions; learn new tasks; and perform routine tasks.  Also noting a severe limitation in the ability to exercise judgment and make decisions).  The ALJ concluded these findings were internally inconsistent.  This Court disagrees.

    A moderate limitation in memory is not inconsistent with marked limitations in the ability to complete simple tasks and learn new tasks.  Nor is it inconsistent with severe limitations in the ability to exercise judgment and make decisions.  Memory is not the only aspect of cognitive functioning that impacts the ability to perform such work related tasks.  As plaintiff points out, Dr. Bargreen, in addition to noting moderate memory deficiency on mental status examination, observed other abnormalities in plaintiff's cognitive and social functioning.  These limitations account for Dr. Bargreen's opinion regarding plaintiff's work related limitations.

    For example, Dr. Bargreen observed plaintiff's social judgment and reasoning skills appeared to be lower than his peers and that plaintiff's "ability to combine fluid intelligence reasoning with crystallized intelligence is below is peers."  AR at 525.  Dr. Bargreen also wrote:

> [plaintiff's] vocabulary appears to be below his peers, as he incorrectly responded to the word 'curious' and did not know the word 'breakfast' and did not know the word 'fable,' did not know the word 'reluctant' and did not know the words 'ominous' or 'plagiarize.'  He has major struggles with verbal expression.

AR at 525.  Based on plaintiff's performance on mental status examination, Dr. Bargreen also concluded plaintiff has below average ability to combine verbal and abstract reasoning, and below average ability in logic and social judgments.  AR at 525.

REPORT AND RECOMMENDATION - 9

Dr. Bargreen also made several objective clinical observations regarding plaintiff's presentation at the examination that are relevant to Dr. Bargreen's assessment of plaintiff's functional limitations. For example, Dr. Bargreen noted that plaintiff appeared depressed and lethargic during the examination. AR at 521. "He has some major body odor and he appears as disheveled as his self-care is very poor." AR at 521. "He appeared to have some major trouble with diction and he has a very poor cognitive and memory ability." AR at 521. Dr. Bargreen also observed plaintiff's paranoia during the examination and concluded it was likely "induced by heavy drug use a few years back." AR at 523.

These clinical observations lend further support for Dr. Bargreen's conclusions that plaintiff would have marked difficulty in various areas of work related functioning. Moreover, Dr. Bargreen is an acceptable medical source qualified to render medical opinions regarding a claimant's mental functional limitations; as such, Dr. Bargreen is in a better position than the ALJ to interpret the results of plaintiff's mental status examination testing. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)). For these reasons, the ALJ's erred by rejecting Dr. Bargreen's opinion on this first basis.

The second example of inconsistencies offered by the ALJ concerned the results of plaintiff's 2011 memory testing on mental status examination. AR at 28 (citing AR at 531). Here, the ALJ pointed out that despite Dr. Bargreen's assessment of "marked struggles with [plaintiff's] short term memory," plaintiff was able to repeat six digits forward and backward, as well as memorize three simple objects during the examination. AR at 28 (quoting AR at

REPORT AND RECOMMENDATION - 10

531). Indeed, according to Dr. Bargreen's report, plaintiff performed perfectly on memory testing in 2011. *See* AR at 531.

As such, the ALJ is correct that plaintiff's perfect performance on memory testing is inconsistent with Dr. Bargreen's conclusion that plaintiff "has some marked struggles with his short-term memory." AR at 531. Notably, this limitation is a more significant than the limitations opined by Dr. Bargreen following past examinations where plaintiff actually exhibited deficiencies on memory testing. *See* AR at 248 ("[Plaintiff] was unable to repeat 6 digits backwards. [Plaintiff] was unable to repeat 5 digits forward. [Plaintiff] was able to repeat 4 digits forward. He has some difficulty with his short-term memory."), 525 ("He is able to repeat 3 digits forwards and backwards. He was able to repeat 4 digits forward and backwards. He was able to repeat 5 digits forward and backswords. He was unable to repeat 6 digits forwards and backwards. He has some moderate problems with his short-term memory."). Without more, however, this inconsistency does not constitute substantial evidence sufficient to reject *all* of the limitations, cognitive and social, opined by Dr. Bargreen during the course of Dr. Bargreen's three evaluations of plaintiff. Over the three years of testing, Dr. Bargreen's identified abnormalities based on objective findings and clinical observations which were with Dr. Bargreen's assessment of marked limitations in various areas of work related functioning.

For example, in 2011 Dr. Bargreen noted abnormalities on mental status examination and made clinical observations of plaintiff's behavior and presentation that support Dr. Bargreen's opinion regarding plaintiff's functional limitations. As in 2010, Dr. Bargreen noted in 2011 that plaintiff was poorly groomed. AR at 528. Dr. Bargreen further noted plaintiff presented as anxious with some hypermotor agitation. AR at 531. Also consistent with the 2010 observations, Dr. Bargreen noted that plaintiff "has a considerably below average

REPORT AND RECOMMENDATION - 11

vocabulary and some struggles with verbal expression." AR at 531.  And that plaintiff's performance on questions that combined abstract thinking and fluid intelligence, as well as questions that pertained to social judgment was considerably below his peers.  AR at 531.

Dr. Bargreen also made similar findings in his 2009 evaluation of plaintiff.  It is notable that the ALJ identifies no inconsistencies in the 2009 examination report.  *See* AR at 28.  In 2009, Dr. Bargreen noted plaintiff appeared depressed.  AR at 252.  Based on the results of mental status examination testing, Dr. Bargreen concluded plaintiff had some problems with short-term memory due to plaintiff's inability to repeat five and six digits forward and backward.  AR at 248.  Additionally, plaintiff was not fully oriented to time.  AR at 248.  Consistent with later evaluations, Dr. Bargreen noted that plaintiff had difficulties with vocabulary and verbal expression, as well as difficulty combining fluid intelligence reasoning with crystallized intelligence.  AR at 248.  Based on the results of the 2009 evaluation, Dr. Bargreen recommended that "a battery of personality and cognitive testing" be done to "better understand [plaintiff's] personality and cognitive functioning.  AR at 248.

With the exception of Dr. Bargreen's 2011 finding that plaintiff has marked short term memory limitations, which is not supported by contemporaneous memory testing conducted in 2011, the results of plaintiff's mental status examinations as well as Dr. Bargreen's clinical observations of plaintiff over the years are consistent with Dr. Bargreen's opinion that plaintiff would have marked limitations in many areas of basic work related functioning.  For these reasons, the ALJ did not offer legally sufficient reasons to reject of the opinion evidence of Dr. Bargreen.  *See Bayliss,* 427 F.3d at 1216

          2.    *Reliance on subjective complaints*

In rejecting Dr. Bargreen's opinions, the ALJ also concluded Dr. Bargreen likely relied heavily on plaintiff's less than credible subjective complaints.  AR at 28.  An ALJ, however,

REPORT AND RECOMMENDATION - 12

does not provide legally sufficient reason for rejecting the opinion of an examining psychologist by questioning the credibility of a claimant's complaints "where the [examining psychologist] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." *Ryan v. Comm'r Soc. Sec. Admin*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, as in discussed previously, Dr. Bargreen made various clinical observations of plaintiff which were consistent with Dr. Bargreen's opinions regarding plaintiff's functional limitations. As in *Ryan*, there is "nothing in the record to suggest" that Dr. Bargreen relied on plaintiff's "description of [his] symptoms . . . more heavily than [Dr. Bargreen's] own clinical observations." *Id*. at 1200. For this reason, the ALJ erred by rejecting Dr. Bargreen's opinion. *See id*. As such, the ALJ's assessment of Dr. Bargreen's medical opinions should be reversed and remanded to the Commissioner for further consideration.

B.  Plaintiff's Credibility and Residual Functional Capacity Assessment

Plaintiff also argues the ALJ erred by finding plaintiff's testimony not credible and in evaluating plaintiff's residual functional capacity. Dkt. 16 at 7-12. The Court already has concluded that the ALJ erred in assessing the medical evidence, and that this matter should be reversed and remanded for further consideration. Additionally, because a determination of a claimant's credibility and functional capacity relies in part on the assessment of the medical evidence, plaintiff's credibility and residual functional capacity also should be assessed anew following remand of this matter. *See* 20 C.F.R. § 416.929(c),(e).

C.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for

REPORT AND RECOMMENDATION - 13

additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id*.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Here, further development of the administrative record is necessary to re-evaluate the three medical opinions of Dr. Bargreen as well as plaintiff's credibility, and, if warranted by this re-assessment, plaintiff's residual functional capacity. It also may be necessary for the Commissioner to obtain additional vocational evidence to determine the impact of Dr. Bargreen's opined limitations on plaintiff's ability to perform his past relevant work and other work that exists in the national economy.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42

U.S.C. § 405(g), and not inconsistent with the Court's instructions.   A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 31, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 7, 2014**.

DATED this 17th day of October, 2014

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge